# SENTENCE DATA SHEET

**CRIMINAL NO.: 4:20cr130**

**DEFENDANT: Joseph The Defendant**

**DEFENDANT'S IMMIGRATION STATUS:** United States Citizen

**GUILTY PLEA**: **Counts 1 and 2:** Title 26 USC 5861d:  Possession of an
Unregistered Destructive Device
**Count 3:** Title 18 U.S.C. § 922(a)(1)(A):  Engaging in the Business of
Firearms Without a License

**SUBSTANCE OF PLEA:**    Defendant to Plead to Counts 1-3

**Counts 1 and 2:  Title 26 USC 5861d**

*First:* That the defendant was a received or possessed a firearm (a destructive device) at
the time alleged in the indictment;

*Second*: That the firearm had not been registered to him in the National Firearms
Registration and Transfer Record.

**Penalty:** Imprisonment up to ten years; fine not to exceed $10,000; supervised release up
to three years; $100 special assessment

**Count 3**: **Title 18 U.S.C. § 922(a)(1)(A)**

1. The defendant was not licensed to deal [import] [manufacture] firearms; and
2. The defendant willfully engaged in the business of dealing [importing] [manufacturing]
   firearms.
3. The defendant willfully engaged in the business of dealing [importing] [manufacturing]
   firearms.

   **Penalty:** up to five years imprisonment and a fine of not more than $250,000.


**ALTERNATIVE FINE BASED ON GAIN OR LOSS:** Not Applicable

**SENTENCING GUIDELINES:** Advisory

**ATTACHMENT(s):** SDS and Proffer

By: _____/s/_____
     Lisa M. Collins,
     Assistant U.S. Attorney
     (713)567-9700

# UNITED STATES
# DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:20cr130 |
| | § | |
| JOSEPH THE DEFENDANT, | § | |
| Defendant. | § | |

## PROFFER

The Government would show and prove beyond a reasonable doubt that:

On January 5, 2020 a Confidential Informant, hereinafter referred to as the CI, was contacted by an individual who identified himself as "Robert" and was later identified as the Defendant, Joseph Weldon, through the messaging portion of OfferUp and said he could build AR15 pistols and rifles for $700.00. The Defendant told the CI he could make rifles without serial numbers and pipe bombs. The Defendant said the pipe bombs would cost $350.00 each. The Defendant also stated he could build a firearm with a trigger that could fire a single shot for $750.00 or multiple shots with a single pull of the trigger for $950.00. The Defendant also stated that he could acquire firearms and remove the markings from them.

In reference to the pipe bombs, the Defendant told the CI that he was not going to drill a hole in the cap for the fuse and that someone will have to take the cap off, drill a hole, put a fuse through it then replace the end cap, and then it would be ready to initiate. The Defendant said the powder burns inside the pipe and creates pressure within the pipe which causes it to blow up.

On January 17, 2020, the DEFENDANT stated that he has built about 67 firearms and has sold 15 of them to one individual. In reference to future transactions, THE DEFENDANT said he would build pipe bombs with a "remote control".

On that same date the CI met with THE DEFENDANT at a predetermined location in the Southern District of Texas. THE DEFENDANT brought eleven (11) galvanized pipes, sealed with end caps on both ends, concealed in a yellow, cardboard DeWALT® box. While meeting with the CI, THE DEFENDANT removed one of the end caps from one of the devices and showed the CI where to drill a hole for a fuse. THE DEFENDANT told the CI he could follow him to his storage unit in Webster, Texas to get the fuse. THE DEFENDANT told the CI he was going to get some shrapnel to add to the pipe bombs. THE DEFENDANT told the CI, he/she needs to get some large "dope" baggies in which to put the shrapnel, and then tape it to the outside of the pipe bomb. THE DEFENDANT explained that when the device exploded it would throw the shrapnel everywhere. THE DEFENDANT reiterated to the CI that the next pipe bombs he was going to make were going to be totally different, stating they would contain electric detonators. After the CI paid THE DEFENDANT for the pipe bombs, an undercover law enforcement agent arrived. THE DEFENDANT placed the devices in the trunk of the undercover agent's vehicle. Then the undercover agent left the area. THE DEFENDANT then retrieved a bump-stock from the bed of his truck and gave it to the CI in exchange for $300.00.

After the undercover agent left, the CI followed THE DEFENDANT to his storage unit, located at 20602 Gulf Freeway, Webster, Texas in the Southern District of Texas. THE DEFENDANT retrieved a rolled up section of green fuse in a clear zip lock bag and gave it to the CI. During this part of the transaction THE DEFENDANT also gave the CI a box containing a holster and other holster accessories, a Plano brand ammunition box, four (4) rounds of Remington .223 caliber ammunition (which THE DEFENDANT claimed were incendiary rounds that could burn through a vest), thirty-four (34) rounds of PPU 38 Special ammunition and a 514 CS Federal Blast Dispersion Grenade.

The CI then followed THE DEFENDANT to the Academy Sports and Outdoor located at 21351 Gulf Freeway, Webster, Texas. Once parked in the parking lot, THE DEFENDANT gave

the CI several plastic baggies he said were for shrapnel. THE DEFENDANT then drove to a different part of the parking lot and entered the store. When THE DEFENDANT returned, he gave the CI three (3) boxes of Daisy Powerline steel slingshot ammo, to serve as shrapnel. The transaction concluded and THE DEFENDANT and the CI left the area.

While the transaction between THE DEFENDANT and the CI continued, ATF and HPD Bomb technicians met with the undercover agent who took possession of the eleven (11) pipe bombs from THE DEFENDANT. The Bomb Technicians transported the eleven (11) devices to a safe location and disassembled two of the devices. The two disassembled devices were found to contain black powder or a black powder substitute.

On January 22, 2020 ATF Special Agent Curtis Williams conducted a query on THE DEFENDANT through the National Firearm Registration and Transfer Record. No records were located, indicating that THE DEFENDANT did not have any destructive devices and/or firearms registered as required by law.

On January 23, 2020 SA Williams conducted an Ignition Susceptibility Test (IST) on a sample of the powder found in the two devices that were disassembled, and a small section of fuse THE DEFENDANT gave the CI. The powders were energized when flame was applied and the fuse was functional. ATF Explosives Enforcement Officer Alex Guerrero stated that, based on the powder-filled pipes, green fuse and 3/8" steel slingshot ammunition sold and delivered to the CI by THE DEFENDANT, along with THE DEFENDANT's instructions on how to attach the fuse and shrapnel to the pipes, he would classify these devices as destructive devices as defined in 26 U.S.C. § 5845 (f).

On January 28, 2020 the CI spoke with THE DEFENDANT on a recorded phone call. During the call THE DEFENDANT stated that he added something to make the devices stronger. THE DEFENDANT stated these devices would "burn brighter and "catch fires". THE DEFENDANT told the CI he will have an AR type rifle ready for the CI on January 31, 2020.

THE DEFENDANT said he would charge the CI $1500.00 to build an AR rifle that fires a three (3) round burst. Your affiant understood this to mean that the firearm would fire three (3) rounds with a single pull of the trigger. The CI also inquired about where THE DEFENDANT built the devices. THE DEFENDANT replied that he built them in his storage shed.

On January 28, 2020 SA Williams initiated a query of the ATF Federal Licensing System (FLS) database. On the same day, SA Williams learned that Joseph Allen THE DEFENDANT is not Responsible Person on any ATF Federal Firearms License (FFL), ATF Federal Explosive License (FEL), or ATF Federal Explosive Permit (FEP), nor has he ever been a responsible person on any FFL, FEL, or FEP. Additionally, he is not an Employee Possessor on any ATF FEL or ATF FEP as required by law for him to possess and deliver the explosive devices to the CI.

On January 31, 2020 the CI met with THE DEFENDANT in the Southern District of Texas. Special Agents watched as the CI gave THE DEFENDANT approximately 8,000 in exchange for for 20 pipe bombs, 2 firearms and a suspected grenade launcher. An undercover Agent with ATF, as before, drove up to the location and THE DEFENDANT placed the pipe bombs in the trunk of his car. The undercover agent then took the items directly to a secure location where ATF agents then x-rayed and examined the items determining them to be explosive devices as defined in 26 U.S.C. § 5845 (f). At this time, it was determined there were 19 pipe bombs instead of the 20 promised.

 

 

**Respectfully Submitted,**
**RYAN K. PATRICK**
**United States Attorney**
**By: __/s/ Lisa M. Collins_____**
    **Lisa M. Collins**
    **Assistant United States Attorney**